JOY, *Ex'r, v.* FESLER, *Ex'x.*

</div>

A testatrix, in the fifth clause of her will, provided a fund for the repair of her burial lot; in the sixth clause, provided a fund for the erection of a monument in the family burial-ground, and for otherwise improving and fitting up said lot, and also directed that she should be buried in a metallic casket, the same to be placed in a permanent brick vault in the burying-ground; and in the seventh clause, provided that the residue of her estate should be expended in the improvement of the family burial lot.   There being a family burial-ground in which she had the right of burial, but no lot therein belonging to her, it is to be understood that the executors are to select a lot, and the provisions of the fifth and sixth clauses refer to the lot so selected.   As no provision is made for repairs on any other part of the burying-ground, the monument should be erected on this lot.   The expenditure provided for in the seventh clause may be made on any addition to the family burying-ground as well as on the same as it existed at the death of the testatrix, but it is not the duty of the executors to try to secure such an addition, although a certain addition had been contemplated by the testatrix, and she had obtained an agreement by an adjoining owner to make the same.

Evidence of statements made by a testatrix as to the disposition to be made of her remains and the location of her monument is incompetent.

BILL IN EQUITY, by an executor against his co-executrix, asking for a construction of the following clauses in the will of Sarah E. Griffiths:

" 5th. I give and bequeath to the town of Durham in said state the sum of three hundred dollars in trust for the following purpose : to hold, manage, and invest the same, and expend the income in making necessary repairs upon my burial lot in said Durham.

" 6th. I authorize, request, and direct my executors herein named to appropriate and expend from my estate the sum of three thousand dollars for the purpose of erecting a suitable monument to my memory in the family burying-ground in said Durham, and for otherwise improving and fitting up said lot as they may see fit.   I direct my executors hereinafter named to provide that I shall be buried in a metallic casket, the same to be placed in a permanent brick vault in the burying-ground in said Durham.

" 7th. I do give, bequeath, and devise all the rest, residue, and remainder of my estate, wherever situate or however described, to my executors hereinafter named, to be expended by them on the family burial lot in Durham aforesaid, to improve the same."

Facts found by the court. Between five hundred and a thousand dollars is disposed of by the seventh clause. The burying-ground contains nine thousand to ten thousand square feet, and is in a farm which has been in the Joy family since 1740, the title to which was transferred from one member to another by descent until 1847. In that year the testatrix, being a member of the family, had become the owner of an undivided fourth part of the farm by descent, and her husband became the owner of the other three fourths by a deed from other members of the family, which contained a reservation of the burying-ground. The testatrix subsequently acquired her husband's interest, and on November 10, 1870, conveyed the farm to Alfred T. Joy, " except one lot . . . fenced by a stone wall and now occupied for a burial-place, which is reserved for said purpose for any and all of the Joy family who may desire here to bury their friends and keep the lot they occupy in good repair at the expense of those living of the nearest of kin . . . and not to be used for any other purpose whatever, and to be known as the Joy Family Burying Ground. And the said Alfred T. Joy agrees on his part to add seventy-five feet on the north and seventy-five feet on the east side, making thereby one large burying-place for any and all of said Joy's family forever free of expense for the land, each family to improve and ornament as they please for said use and no other." The addition has not been made. There are eleven graves aside from that of the testatrix in the burying-ground— all of members of the Joy family, including the father and mother of the testatrix. The testatrix erected a monument to the memory of the family, with the names, etc., of eight members inscribed upon it, located at one side of and a considerable distance from the graves. She also improved the ground in various ways. It is not divided into burial lots. The plaintiff and the defendant selected the place for the burial of the testatrix. The defendant offered in evidence statements made by the testatrix shortly before her death as to the disposition to be made of her remains and the location of her monument, which were excluded, subject to exception.

*Joseph F. Wiggin,* of Massachusetts, for the plaintiff.

*Burnham, Brown & Warren,* for the defendant.

CHASE, J. The burying-ground in the Joy farm was set apart by the owners of the farm for the use of the Joy family. The testatrix, being a member of the family, had a right to appropriate a reasonable portion of it for a burial lot for herself. By directing

that her remains should be deposited in a permanent brick vault in this ground, she signified her election to make use of her right. She did not select the particular location for her lot, nor determine its size and form, but left these matters to be attended to by her executors. They could not perform the duties expressly imposed upon them without selecting a lot and fixing its boundaries. In doing so they were bound to regard the rights of others, and to act reasonably under all the circumstances. Upon the selection of a lot by them and the determination of its limits it became her " burial lot" within the meaning of those words as used in the fifth clause of her will. It is the lot that is to be improved and fitted up by the money appropriated in the sixth clause, and that is there designated " said lot," " said" being used to render it more certain that the burial lot mentioned in the fifth clause is the one referred to in the sixth. The erection of a vault is a part, at least, of the fitting up that was contemplated. The fact that provision is made in the seventh clause for improving the burying-ground as a whole is evidence that it was not the intention to devote any part of the money mentioned in the sixth clause to that object.

Provision is also made in the sixth clause for erecting a suitable monument to the memory of the testatrix " in the family burying-ground." The limitation of its location to the family burying-ground raises the query whether it may be located on some suitable spot within the ground outside her burial lot, or whether it must be placed upon that lot. When the monument is erected it will become a part of the land (*Sabin* v. *Harkness*, 4 N. H. 415) ; and if it is placed on her lot, the provision made in the fifth clause for the repairs of the lot will insure necessary repairs of the monument. If it is placed elsewhere, there will be no provision for that purpose. It is improbable that the testatrix would omit to make provision for the necessary repairs of so costly an object when she had the subject of repairs under consideration. The fact that the only provision made for repairs relates to the lot tends to show that she intended the monument should become a part of the lot, and understood the trust fund would preserve it and other appurtenances of the lot. Such location is in accordance with the usual custom. Generally, one purpose of a monument is to mark the spot where the ashes of the deceased repose. It is accordingly found that the sum mentioned in the sixth clause was designed to be used in fitting up and improving the lot selected by the executors for the burial of the testatrix and in erecting upon it a suitable monument to her memory.

The meaning of the seventh clause is apparent. It requires the executors to expend the residue of the estate in improving the family burying-ground as a whole, according to their discretion. If Alfred T. Joy makes an addition to the ground, as he agreed to do by the acceptance of Mrs. Griffith's deed of November 10, 1870,

the money may be used in improving the original ground and the addition indiscriminately; but it is not the duty of the executors to enter into controversy to secure such addition. There is nothing in the will tending to show that she intended to impose a task upon them which she herself had failed to undertake for so many years. It is not suggested, nor is it probable, that the addition is needed to provide a suitable burial lot for the testatrix. If the addition is not made, the executors should make the improvements upon the ground as it was at the decease of the testatrix.

The evidence offered by the defendant was properly excluded. *Ordway* v. *Dow*, 55 N. H. 11; *Raynes* v. *Raynes*, 54 N. H. 201; *Hoitt* v. *Hoitt*, 63 N. H. 475.

*Case discharged.*

SMITH, J., did not sit: the others concurred.